IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MULTICARE HEALTH SYSTEM d/b/a TACOMA GENERAL HOSPITAL<br>315 Martin Luther King, Jr. Way<br>Tacoma, Washington 98415<br>Medicare Provider No. 50-0129<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL O. LEAVITT,<br>Secretary<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>                Defendant | Civil Action No._____ |

## COMPLAINT

Plaintiff, Multicare Health System ("Plaintiff"), by and through its undersigned attorneys, brings this action against defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, and states as follows:

A.    Jurisdiction and Venue

     1.    This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (the "Medicare statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

     2.    This Court has jurisdiction under 28 U.S.C. § 1361

     3.    Venue lies in this judicial district under 28 U.S.C. § 1391

B.    Parties

4. Plaintiff Multicare Health System d/b/a Tacoma General Hospital (the "Hospital" or "Plaintiff") is a not-for-profit health care corporation located in Tacoma, Washington. It furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program.

5. Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services ("HHS"), the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA"). In this complaint, Plaintiff will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

C. General Background

6. The Medicare statute establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U.S.C. § 1395cc, Plaintiff entered into a written agreement with defendant to provide hospital services to eligible individuals.

7. Under 42 U.S.C. § 1395x(v)(1)(A), providers of inpatient hospital services, such as Plaintiff, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be

          included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. § 1395x(v)(1)(A).

8. In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers or services in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered." *Id.* The Secretary has elected to publish many rules implementing the Medicare program in various manuals, such as the Provider Reimbursement Manual.

9. Effective with cost reporting years beginning on or after October 1 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as Hospital, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Effective with cost reporting years beginning on or after October 1 1991, a complementary PPS process was implemented to reimburse hospitals, such as Plaintiff, for inpatient hospital capital-related costs. *See* 42 U.S.C. § 1395ww (g).

10. Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. An intermediary is assigned to each hospital, such as Plaintiff, that participates in Medicare. Fiscal intermediaries make periodic interim payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. § 1395h.

11. At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R.

§§ 413.24 and 413.50. The hospital must submit its cost report in compliance with law. The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with law.

12. If a hospital is dissatisfied with its intermediary's final determination of total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways: (a) The hospital has a right to obtain a hearing before the Provider Reimbursement Review Board ("Board" or "PRRB") by filing an appeal with the Board within 180 days of receiving its NPR. *See* 42 U.S.C. § 1395oo; or (b) The hospital may request reopening of an intermediary's determination within three years of the date of notice to the hospital of the intermediary's determination. 42 C. F.R. § 405.1885(a).

13. Regardless whether a hospital files for a PRRB hearing or seeks reopening, regulations adopted by the Secretary require an intermediary's determination to be reopened within three years of the date of notice of it to the hospital if CMS notifies the intermediary that the determination is in any way "inconsistent with the applicable laws, regulations, or general instructions" issued by CMS. 42 C.F.R. § 405.1885(b).

D. <u>Procedure for Administrative and Judicial Review of PRRB Decisions</u>

14. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, under 42 C.F.R. § 405.1873 the Board is authorized to decide questions relating to its jurisdiction. The

        decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.

15. A hospital may obtain judicial review of a final administrative decision, including a decision relating to the jurisdiction of the Board, by filing suit within 60 days of receipt in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f).

16. The Supreme Court has held that a decision denying a provider's request for reopening under 42 C.F.R. § 1885(a) is not subject to judicial review. *Your Home Visiting Nurse Services, Inc. v. Shalala,* 525 U.S. 449 (1999). However, the Supreme Court did not preclude challenges to the process and standards used when rendering a reopening decision. *Compare, e.g., Universal Health Servs. of McAllen, Inc. v. Sullivan,* 770 F. Supp. 704, 712 (D.D.C. 1991), *aff'd mem.,* 978 F.2d 745 (D.C. Cir. 1992). Accordingly, where, as here, a reopening request is denied as a result of the application of an unlawful process, the process is subject to judicial review.

E. <u>Medicare Policies Regarding Payment for the Disproportionate Share Hospital Adjustment</u>

17. Under PPS, Medicare payments to hospitals for inpatient operating costs are based on predetermined, nationally-applicable rates, subject to certain payment adjustments. 42 U.S.C. § 1395ww (d); 42 C.F.R. Part 412. One

"DSH" adjustment, is available to PPS hospitals that qualify if they serve a disproportionate share of low-income patients. *See* 42 U.S.C. § 1395ww(d)(5)(F).

18. Under 42 U.S.C. § 1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment for operating costs for PPS hospitals serving a "significantly disproportionate number of low-income patients," which is computed for a given cost-reporting period based on the sum of two fractions. For one of these fractions, known as the "Medicaid Low Income Proxy," it is necessary to determine the number of inpatient days that patients who "were *eligible* for medical assistance [i.e., Medicaid]" received services at the hospital. 42 U.S.C. § 1395ww (d)(5)(F)(vi)(II) (emphasis added). In general, the more Medicaid inpatient days that a hospital has, the larger its Medicare DSH adjustment will be.

19. A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment. *See* 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. § 412.106. This rule limited the number of Medicaid inpatient days to be used to compute the DSH adjustment by allowing hospitals to include only the days: "for which benefits are payable under [Medicaid]. Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days." This final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible"

      Medicaid inpatient days, when computing the DSH adjustment. This is known as the Secretary's "paid days" policy.

20.    The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy. See *Jewish Hosp., Inc. v. Secretary* of *Health and Human Services,* 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp.* v. *Shalala,* 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala,* 97 F.3d 1261 (9th Cir. (1996); *Cabell Huntington Hosp. v. Shalala,* 101 F.3d 984 (4th Cir.1996). Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based. No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

21.    As a result of these four judicial decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling ("HCFAR") published in accordance with 42 C.F.R. § 401.108. This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients *eligible* for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days. This is known as the Secretary's "eligible days" policy. A copy of HCFAR 97-2 is attached hereto as Exhibit 1.

22.    By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the

Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

23. The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

24. HCFAR 97-2 also explicitly provides that (1) it is effective for "all cost-reporting periods beginning on or after February 27, 1997" and (2) that all eligible days "may be included" for "cost reports that are settled by fiscal intermediaries on or after" February 27, 1997. However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

25. HCFAR 97-2 also explicitly states that HCFA will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth Medical Center v. Thompson,* 257 F.3d 807 (D.C. Cir. 2001) *("Monmouth")*. The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with § 405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general

instructions." *Monmouth,* 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. § 405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so. The *Monmouth* decision is now final and no longer subject to further judicial review.

26. Based on the authority of *Your Home,* the PRRB has declined to assert jurisdiction over the appeal of a hospital to the PRRB regarding the refusal of the fiscal intermediary to reopen the hospital's cost report in light of the *Monmouth* decision.

27. Until as recently as the Secretary's January 2006 Petition for a Writ of Certiorari, the Secretary has consistently maintained that unless a hospital filed a timely reopening request following the Issuance of HCFAR 97-2, or timely appealed a DSH determinations to the PRRB it was not entitled to any reopening. Moreover, in its January 2006 Petition for a Writ of Certiorari, the Secretary maintained its rejection of "administrative acquiescence" with *Monmouth's* instruction that Fiscal Intermediaries were required to open Cost Reports due to have been filed with the Intermediary in the three years preceding the issuance of HCFAR 97-2.

28. The Secretary, in his January 2006 Petition for a Writ of Certiorari, additionally concedes, (and would be estopped from arguing otherwise in this civil action) that the D.C. Circuit Court of Appeals decision in *Leavitt v. Baystate Health Systems*, 414 F.3d 7 (D.C. Cir. 2005)(*cert denied*, 2006 U.S. LEXIS 2717; 74 U.S.L.W. 3559 (April 3, 2006): "imposes a

mandatory duty on the Secretary and intermediaries, enforceable by mandamus, to reopen closed cost reports even for providers that not only failed to appeal determinations by their intermediaries, but also failed even to seek reopening of those determinations within three years, as required by the only regulation that allows for reopening at the behest of a provider, 42 C.F.R. § 405.1885(a)."

F. <u>Facts Applicable to Hospital</u>

29. The deadline for Plaintiff to file its FY 1991 - 1993 cost reports with the intermediary was prior to the February 27, 1997 issuance of HCFAR 97-2. Thus, when Hospital filed its FY 1991 - 1993 cost reports the Secretary's then-current policy of using "paid" rather than "eligible" inpatient Medicaid days was in effect.

30. The Hospital cost reports for FY 1991 - 1993 were audited and NPRs were issued prior to the issuance of HCFAR 97-2, on September 30, 1994, September 29, 1995, and September 27, 1996, respectively.

31. The Hospital cost reports for FY 1991-1993 were subject to reopening on February 27, 1997 when HCFAR 97-2 was issued because each of the NPRs was issued less than three years prior to that date.

32. For the Hospital cost reports for FY 1991-1993, the reopening prohibition precluded the intermediary from reopening to properly apply the Secretary's eligible days policy.

33. For the Hospital's cost reports for FY 1991- FY 1993, the intermediary's DSH payment determinations were made in accordance with the Secretary's invalidated policy of using "paid," rather than "eligible,"

        inpatient Medicaid days when computing DSH payments. Accordingly, the intermediary understated the DSH payments for FY 1991-1993.

34. As of the date of this Complaint, the Hospital has not filed a reopening request for FY 1991-1993 as provided in 42 C.F.R. § 1885(b). No reopening request was made for these years, because such a request, judging by the Secretary's and his intermediaries' past practice, would have been futile. The law is clear that Plaintiff is not required to request that its fiscal intermediary grant relief proscribed by the Secretary. See *Bethesda Hosp. Assoc. v. Bowen*, 485 U.S. 399 (1988).

35. This Court has jurisdiction to hear this case under 28 U.S.C. § 1361 because Plaintiff is entitled to a writ of mandamus on account of the intermediary's failure to reopen the Hospital's 1991-1993 cost reports to correct the number of "eligible days."

36. This Court also has jurisdiction to hear this case under 28 U.S.C. § 1331 because the Plaintiff is challenging administrative action by the Secretary for which jurisdiction is not provided under the Social Security Act. In such cases the Supreme Court has held that jurisdiction for review is available under 28 U.S.C. § 1331 because of "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986).

**COUNT I**

37. Plaintiff hereby incorporates by reference each of the foregoing paragraphs herein.

38. Plaintiff is entitled to issuance of a writ of mandamus under the *Monmouth* decision and the intermediary's mandatory reopening policy because: (a.)

Plaintiff has either exhausted all administrative remedies and done all it can to vindicate its right to reopening in its effort to obtain proper Medicare payments for Hospital FY 1991-1993 under the Secretary's "eligible days" policy, or its efforts to do so would have been futile; (b.) HCFAR 97-2 gave notice to the Secretary's contractors, including the intermediary, that the DSH payment determinations made under his "paid days" policy were "inconsistent with applicable law;" and (c.) Under 42 C.F.R. § 405.1885(b) the *Monmouth* decision, and the *Baystate* decision, the intermediary has a non-discretionary duty to reopen the Hospital FY 1991-1993 cost reports to correct the improper Medicare DSH payment determination that it made under the Secretary's unlawful "paid days" policy.

**REQUESTED RELIEF**

WHEREFORE, Hospital requests:

1. The issuance of a writ of mandamus requiring the Secretary to order Hospital's intermediary or its successor in interest, to reopen the Hospital's FY 1991-1993 Medicare cost reports and recalculate the Hospital's Medicare DSH payment determinations for those fiscal years using the Secretary's "eligible days" policy in accordance with HCFAR 97-2;

2. Legal fees and costs of suit incurred by Hospital; and

3. Such other relief as the Court may deem just and proper.

Respectfully submitted,
Alderman & Devorsetz, PLLC

_____

Of Counsel
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 969-8220
(202) 969-8224 (facsimile)
ehansen@a-dlaw.com

and

Leslie D. Alderman III (D.C. Bar No. 477750)
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 969-8220
(202) 969-8224 (facsimile)
lalderman@a-dlaw.com

COUNSEL FOR PLAINTIFF
MULTICARE HEALTH SYSTEM
d/b/a TACOMA GENERAL HOSPITAL

Date:   May 2, 2006